**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

PRUDENCE F. MAXON,

        Plaintiff,

v.                                                      Case No: 6:17-cv-1569-Orl-40TBS

SENTRY LIFE INSURANCE COMPANY,

        Defendant.
_____/

## **ORDER**

This cause is before the Court on Defendant Sentry Life Insurance Company's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed November 13, 2017. (Doc. 28). Plaintiff Prudence F. Maxon responded in opposition on December 11, 2017. (Doc. 39). With briefing complete, the matter is ripe for review.

**I.    BACKGROUND**

On August 18, 1988, Defendant Sentry Life Insurance Company ("Sentry") issued to Plaintiff a life insurance policy (the "Policy") that, like many other policies issued by Defendant, provided the policyholder an investment, savings, or interest-bearing component (hereinafter "Cash Value") in addition to a death benefit. (*Id.* ¶¶ 10, 18). The Policy established that the Cash Value amount is equal to the sum of premiums received and interest credited to the policy, less deductions for partial surrenders, fees and charges set forth by the Policy. (*Id.* ¶ 21). The funds held as Cash Value under the Policy are the property of, and are held in trust for, the policyholders. (*Id.* ¶ 20).

Plaintiff alleges that Defendant used factors not authorized under the Policy to determine the monthly deductions debited against policy holders' Cash Value accounts, resulting in excessive withdrawals from those accounts. (*Id.* ¶¶ 23–37). On August 29, 2017, Plaintiff initiated this action by filing a putative class action complaint (the "Complaint") against Sentry for various claims arising from Defendant's life insurance business. (Doc. 1). The Complaint asserts five counts arising from Defendant's improper withdrawals and calculations regarding the Cash value accounts: three counts for breach of contract, one conversion count, and one count seeking declaratory and injunctive relief. (*Id.* ¶¶ 51–79). Plaintiff brings the action on behalf of herself and on behalf of a putative class comprised of:

> All persons who own or owned a life insurance policy issued or administered by Defendant, or its predecessors in interest, the terms of which provide or provided for: 1) a cost of insurance charge or deduction, which is calculated using a rate that is determined based on the Defendant's mortality expectations; 2) additional but separate policy charges, deductions, or expenses; 3) an investment, interest-bearing, or savings component; and 4) a death benefit.

(*Id.* ¶ 43).

### A. Defendant's Motion to Transfer

Defendant asserts that this matter should be transferred to the Western District of Wisconsin—where Defendant is headquartered and where the majority of witnesses live, documents are located, and litigation-related transactions occurred. (Doc. 28). In support of the Motion to Transfer, Defendant attaches the declaration of Steve Knez, who is "Senior Director of Individual Life and Annuities for Sentry." (Doc. 28-1, ¶ 2). Mr. Knez' declaration avers the following:

- Sentry is a Wisconsin life insurance company headquartered in Stevens Point, Wisconsin.

- The life insurance policies at issue in this matter were all issued from Sentry's headquarters in Wisconsin.

- As of October 31, 2017, approximately 10,300 Sentry life insurance policies implicated by the Complaint were in-force. Approximately 2,200 of these policies were issued to Wisconsin citizens. Roughly 260 of the policies were issued to Florida citizens.

- Employees and actuaries working at Sentry's Stevens Point, Wisconsin, headquarters are responsible for the design, development, pricing, and administration of the Sentry life insurance policies.

- The personnel charged with filing with regulatory agencies are employees at Sentry's Stevens Point, Wisconsin, headquarters.

- All documents relating to the policies are located in hard copy or on computer servers at Sentry's Wisconsin headquarters.

- The declaration identifies four individuals with knowledge of the subject matter of this action who will potentially serve as witnesses—all of whom are located in Stevens Point, Wisconsin. The declaration identifies a fifth potential witness (former Sentry employee) with knowledge of this litigation's subject matter who lives in Wisconsin.

(*Id.* ¶¶ 1–16). In sum, Mr. Knez' affidavit states that the Western District of Wisconsin is substantially more connected to this litigation than the Middle District of Florida.

Plaintiff opposes transfer, arguing that the Middle District of Florida bears a "strong connection" to this controversy, and that transfer would merely shift the inconvenience "from Sentry, a well-capitalized insurer, to Maxon and her ailing husband." (Doc. 39, pp.

1–2). Plaintiff also submitted a declaration in support of her opposition to Defendant's transfer motion, describing Plaintiff's longstanding ties to Florida. (Doc. 39-1). Plaintiff was born in Florida in 1953 and has remained in Florida since then, with the exception of a brief period living in Texas. (*Id.* ¶¶ 2–5). In 1988, while living in Parrish, Florida, Plaintiff was solicited by an insurance agent to purchase a life insurance policy issued by Sentry (the "Policy"), which she purchased. (*Id.* ¶ 6). The vast majority of Plaintiff's premium payments were sent from Florida. (*Id.* ¶ 8). Moreover, Plaintiff and her husband, Timothy Maxon, suffer from medical ailments that make travel difficult. (*Id.* ¶¶ 13–14).

## II. STANDARDS OF REVIEW

### A. Transfer

District courts are authorized to transfer a civil action to any other district court where the action could have been filed[1] "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The following factors are relevant to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v.*

---

[1] Plaintiff does not dispute that this case could have been filed in the Western District of Wisconsin. (Doc. 39).

*Barrack*, 476 U.S. 612, 622 (1964)). The party requesting transfer bears the burden of establishing that the case should be transferred. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). "The purpose of Section 1404(a) is not to shift inconvenience from a defendant to a plaintiff, nor is it to allow adjudication in a forum that is likely to prove equally convenient or inconvenient." *Rishell v. Comput. Scis. Corp.*, No. 6:13-cv-213-Orl-28GJK, 2013 WL 11834245, at *1 (M.D. Fla. July 24, 2013) (Report & Recommendation) (internal quotations omitted), *adopted*, 2013 WL 11836753 (M.D. Fla. July 30, 2013). The statute is designed to ensure the efficient use of judicial resources. *Id.* at *2.

## III. DISCUSSION

### A. Transfer Furthers Convenience and Justice

The parties take opposite positions as to whether transfer is appropriate, and both contend that the § 1404(a) factors decisively favor their position. The Court finds that Defendant has met its burden of establishing that transfer is appropriate.

#### 1. Convenience of the Witnesses

The first factor, relating to the convenience of non-party witnesses, is an important consideration, though its "significance is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). Defendant identifies several likely witnesses living in Wisconsin, one of whom is not employed by Defendant. (Doc. 28-1, ¶¶ 8–10). This factor is therefore relatively neutral, tilting slightly in favor of transfer. *See also Valentino*

*v. Eli Lilly & Co.*, No. 6:14–cv–1816–Orl–41KRS, 2015 WL 4352321, at *5 (M.D. Fla. July 14, 2015).

### 2. Location of Documents & Access to Proof

The second factor marginally favors transfer. This factor looks to the location of "documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." *Trinity*, 761 F. Supp. 2d at 1327. The importance of this factor, however, is lessened because of the ease and reduced costs of production through electronic document imaging. *Id.* Defendant's affidavit provides that all pertinent documents regarding the policies at issue "are located either in hard-copy or on computer servers located in Stevens Point, Wisconsin." (Doc. 28-1, ¶ 11). Although the vast majority of the proof in this case is located in Wisconsin, the burdens of accessing the proof are lessened by the ease and low cost of electronic production. Accordingly, this factor weighs in favor of transfer slightly.

### 3. Convenience of the Parties

The third factor militates in favor of transfer. As noted above, transfer under § 1404(a) is not appropriate where transfer merely shifts the inconvenience from one party to another, and transfer should not be used to move the case to an equally convenient or inconvenient forum. Moreover, "[t]he Court places little weight on the domicile of corporate defendants and their place of incorporation[.] *Valentino*, 2015 WL 4352321, at *4. Defendant's affidavit discloses that a plurality of potential class members were issued their policies while living in Wisconsin, and a majority living in "Midwestern States," while less than three percent (3%) of the policies at bar were issued to Floridians. (Doc. 28-1, ¶ 7). Defendant is also located in Wisconsin. (*Id.* ¶ 6). Because the Defendant and the

vast majority of potential plaintiffs live outside of Florida, this factor weighs in favor of transfer. *See Rishell*, 2013 WL 11834245, at *6.

### 4. Locus of Operative Facts

The fourth factor weighs heavily in favor of transfer. The Complaint alleges that Defendant collected excessive fees from policyholders' Cash Value accounts. The allegedly improper decisions and calculations that caused the excessive withdrawals were made at Defendant's headquarters in Wisconsin. (Doc. 28-1, ¶¶ 8–10, 14). The policies themselves were drafted and issued from Stevens Point, Wisconsin. (*Id.*). And although Plaintiff and a small percentage of potential class members were issued policies while living in Florida and paid premiums from Florida (Doc. 39-1, ¶¶ 6, 8), Wisconsin is the locus of *operative* facts. *See Rishell*, 2013 WL 11834245, at *6.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

The fifth factor weighs slightly in favor of transfer. Defendant identifies one former employee, living beyond the boundaries of this Court's subpoena power, who will potentially testify at trial to material issues in this litigation. (Doc. 28-1, ¶ 16). Moreover, to the extent that it becomes necessary to compel testimony from putative class members, the vast majority likewise live beyond this Court's subpoena power. (Doc. 28-1, ¶ 7).

### 6. Relative Means of the Parties

In the class action context, this factor is generally irrelevant. *In re Principal U.S. Prop. Account Litig.*, No. 09 Civ 9889(CM), 2010 WL 1645042, at *5 (S.D.N.Y. Apr. 22, 2010) ("This factor is essentially irrelevant in the class action context, since counsel are

financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendant are of absolutely no moment."). And while Plaintiff makes much of statements from Defendant's 2016 Annual Report boasting of its capitalization and financial strength (Doc. 39, p. 13), Plaintiff neglects the *relative* in "relative means of the parties" by failing to expound on Plaintiff's or the putative class' means. Plaintiff is represented by at least four law firms. (Doc. 1, pp. 17–18). This factor is therefore neutral.

### 7. Forum's Familiarity with Governing Law

The seventh factor is neutral. It is doubtless desirable to have the "trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded by statute on other grounds*, 28 U.S.C. § 1404(a), *as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). However, federal courts sitting in diversity are fully capable of interpreting other states' laws. *Valentino*, 2015 WL at *8. The parties agree that the litigation of this matter will require application of laws from more than one state. (Doc. 28, p. 14; Doc. 39, p. 14). That would be so regardless of whether transfer was granted. Accordingly, this factor is neutral.

### 8. Plaintiff's Forum Choice

The eighth factor is neutral. In the class action context, weight accorded to the plaintiff's choice of forum is "considerably weakened." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *see also Schwanke v. JB Med. Mgmt. Sols., Inc.*, No. 5:16–cv–597–Oc–30PRL, 2017 WL 78727, at *3 (M.D. Fla. Jan. 9, 2017). Moreover, the

majority of the putative class members live outside Florida, so the named Plaintiff's forum choice garners little weight. *Rishell*, 2013 WL 11834245, at *7. This factor is thus neutral.

         9.       *Trial Efficiency & the Interests of Justice*

The ninth factor favors transfer. While Florida has an interest in protecting its citizens (like Prudence Maxon) from harm caused by out-of-state actors, the wrongful conduct took place, and the vast majority of putative plaintiffs live, outside Florida. (Doc. 28-1, ¶¶ 6–12). Furthermore, "federal courts hold that the federal district in which a company is headquartered has a unique and compelling interest in adjudicating claims relating to that company." *Amaya v. Victoria's Secret Stores, LLC*, No. 08-81367-Civ, 2009 WL 10667492, at *5 (S.D. Fla. Aug. 3, 2009). A case's connection to a given forum is also important to a transfer analysis, see *PGB of N.C., Inc. v. Zurich Am. Ins. Co.*, No. 15-80448-CIV, 2015 WL 11438216, at *6 (S.D. Fla. July 6, 2015), and this case has a far closer connection to the Western District of Wisconsin than to the Middle District of Florida.

Finally, the statistics show that docket and calendar congestion is greater in the Middle District of Florida than in the Western District of Wisconsin. U.S. Dist. Courts, *National Judicial Caseload Profile* (2017), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf.[2]

---

[2] The undersigned is unmoved by Plaintiff's contention that trial efficiency does not support transfer. While Plaintiff may be correct that the Wisconsin district has more cases pending *per judge* when the number of cases pending is divided by the number of judges overall, this calculation fails to acknowledge that the active District Judges have substantially fuller dockets than Senior District Judges. (Doc. 39, pp. 18–19). Moreover, Plaintiff's inclusion of Magistrate Judges in the case-per-judge equation further distorts the statistics to paint a rosier picture for Plaintiff. (*Id.*); *see also, e.g.*, U.S. Dist. Courts, *National Judicial Caseload Profile* (2017), http://www.uscourts. gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf (stating that the

*10. Conclusion*

In sum, after balancing the factors, the Court finds that transfer is appropriate. At bottom, this case bears a much closer connection to the Western District of Wisconsin than this District. That District is the locus of the operative facts, a comparatively large portion of potential plaintiffs, substantially all of the proof, and the Defendant. Wisconsin has a far greater interest in adjudicating the controversy than Florida, and transfer will further the convenience of the parties and witnesses and serve the interests of justice.

**IV. CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Transfer (Doc. 28) is **GRANTED**.
2. The case is transferred to the Western District of Wisconsin.
3. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on April 11, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

Middle District of Florida had 704 filings per judgeship, to the Western District of Wisconsin's 593).