# EXHIBIT B

FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA 2017 AUG 29 PM 3: 08
### ORLANDO DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

PRUDENCE F. MAXON, Individually and )
On Behalf Of All Others Similarly Situated, )
                              )     Case No. 6:17-CV-1569-ORL-40TBS

     Plaintiff, )

vs. )     **Plaintiff's Class Action Complaint**
                            )     **And Demand For Jury Trial**

SENTRY LIFE INSURANCE COMPANY, )

                            )     **Injunctive Relief Sought**
     Defendant. )

Plaintiff Prudence F. Maxon ("Plaintiff"), individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendant Sentry Life Insurance Company ("Defendant"), states and alleges as follows:

### INTRODUCTION

1.     This is a class action for breach of contract, conversion, and declaratory and injunctive relief to recover amounts that Defendant has charged and collected from Plaintiff and members of a class of life insurance policy owners in excess of amounts authorized by the express terms of their policies. Plaintiff's claims and those of the proposed class are exclusively supported by the explicit provisions of their life insurance policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale.

2.     The terms of Plaintiff's life insurance policy provide for a "Cash Value" consisting of monies held in trust by Defendant for Plaintiff. Over the course of several years, Defendant has systematically deducted monies from Plaintiff's Cash Value in breach of the policy's terms.

3.     Defendant is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of its life insurance policies. Despite

1



EXHIBIT
Doc #1
9   12-6-18
Grossbier & Associates, Inc.

unambiguous policy language in a fully integrated agreement, Defendant deducts charges from the Cash Values of Plaintiff and the proposed class in excess of amounts specifically permitted by their policies.

4.    Defendant has caused material harm to Plaintiff and the proposed class by improperly draining monies they have accumulated in the Cash Values under their policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: invest through the policy; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash. Class members face a "lose-lose" decision: continue to pay the overcharges to maintain their insurance or surrender the policy after having paid significant premiums for decades.

5.    Plaintiff brings this case as a class action under Fed. R. Civ. P. 23, on behalf of herself and as a representative of the following persons (the "Class"):

> All persons who own or owned a life insurance policy issued or administered by Defendant, or its predecessors in interest, the terms of which provide or provided for: 1) a cost of insurance charge or deduction, which is calculated using a rate that is determined based on the Defendant's mortality expectations; 2) additional but separate policy charges, deductions, or expenses; 3) an investment, interest-bearing, or savings component; and 4) a death benefit.

## PARTIES

6.    Plaintiff Prudence F. Maxon is an individual and resident of the State of Florida.

7.    Defendant Sentry Life Insurance Company is a life insurance company organized and existing under the laws of the State of Wisconsin. Defendant is registered to do business in the State of Florida and has a registered agent located at 200 E. Gaines St., Tallahassee, Florida 32399-0000.

## JURISDICTION AND VENUE

2

8.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims alleged herein occurred in this district. Venue is proper in the Middle District of Florida, Orlando Division because Plaintiff purchased the policy in and resides in the Middle District of Florida, and resided in or was employed in Seminole County or Orange County, Florida when a substantial portion of the events at issue in the complaint occurred.

## GENERAL ALLEGATIONS

10.    Plaintiff purchased from Defendant a universal life insurance policy bearing the policy number 47-09952-71, and a policy date of August 18, 1988, with a specified amount of $100,000 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit A, and incorporated herein by reference.

11.    Plaintiff is and has always been the "owner" and the "insured" under the Policy.

12.    Defendant is the effective and liable insurer of the Policy.

13.    The Policy is a valid and enforceable contract between Plaintiff and Defendant.

14.    "The [P]olicy, with all its pages and cover, the attached copies of the application, any supplemental applications and any attached amendments or riders form the entire contract." Ex. A at p. 3.

15.    The terms of the Policy are not subject to individual negotiation and are materially the same for all policyholders. They cannot be altered by an agent's representations at the time of sale.

3

16. "No agent, nor anyone other than one of [Defendant's] officers, has the power to change th[e] contract or waive any of [Defendant's] rights or requirements." Ex. A at p. 3.

17. Defendant has administered and currently administers all aspects of the Policy, and the policies meeting the class definition set forth above (the "Class Policies"), including collecting premiums, and setting, assessing and deducting policy charges.

18. Unlike standard term life insurance policies, the Policy and Class Policies provide policyholders an investment, savings, or interest-bearing component ("savings component," identified in the Policy and Class Policies as the "Cash Value"), in addition to a death benefit. Although other Class Policies may refer to this savings component as the "Accumulation Value," "Account Value," or something similar, because the purpose is the same, it is referred to as the "Cash Value" for purposes of this Class Action Complaint.

19. Generally, under life insurance policies like the Policy and Class Policies, premium dollars are deposited into the Cash Value, from which the insurer deducts those monthly charges authorized by policy terms. Under the terms of the Policy, the Cash Value consists of an interest bearing account that accumulates over time.

20. The funds held in the Cash Value of the Policy and Class Policies are the policy owner's property that Defendant holds in trust for the policy owners.

21. The Policy provides that, on each monthly policy date, the Cash Value will be calculated as (1) minus (2), plus (3), plus (4), minus (5), minus (6), where: (1) is the Cash Value on the previous monthly policy day; (2) is the monthly deduction for the previous policy month; (3) is one policy month's interest on the difference between (1) and (2); (4) is 100% of all premiums received for the policy since the previous monthly policy day, plus interest from the date Defendant received the insured's premium payment; (5) is the amount of any partial surrender made on the monthly policy day; and (6) is the amount of any partial surrender charges or fees made on the monthly policy day. Ex. A at p. 11.

4

22.     Defendant may access and withdraw funds from the Cash Value only as expressly authorized by the Policy and Class Policies.

23.     The Policy and Class Policies expressly define the specific charges that Defendant may assess and deduct from a given policyholder's premium payments and the accumulated Cash Value.  Defendant may deduct only those charges allowed by the Policy and Class Policies.

24.     The Policy authorizes Defendant to take a "Monthly Deduction" from Plaintiff's Cash Value each month.  The Policy provides that the Monthly Deduction for each policy month will be calculated as (1) plus (2) where: (1) is the cost of insurance for the Policy and any additional benefits provided by rider for the policy month; and (2) is a $5 administrative fee. Ex. A at p. 12.

25.     The Policy expressly defines how the monthly "Cost of Insurance Charge" is determined and calculated:

> **Cost of Insurance** – The cost of insurance for the policy is determined on a policy month basis. Such cost is calculated as (1) multiplied by the result of (2) minus (3), where:
>
> (1)     is the mortality charge (as described below);
>
> (2)     is the death benefit at the beginning of the policy month divided by 1.0036748; and
>
> (3)     is the cash value at the beginning of the policy month, less the administrative fee for that policy month and the cost of insurance for any riders.
>
> The cost of insurance for any rider is calculated as shown in the Cost of Insurance Provision of the rider.

Ex. A at p. 12.

5

26.     The Policy explicitly discloses the factors Defendant may use to determine "Mortality Rates" which are used to calculate the Mortality Charge which is used to calculate the Cost of Insurance Charge that is deducted from the Cash Value each month:

> **Mortality Charge** – The monthly mortality charge is based on [the Defendant's] current Mortality Rates and the Mortality Class Factors for [the insured's] policy. (These two parts to the mortality charge are described below). A detailed statement of the formulas used to calculate the monthly mortality charge has been filed with the Insurance Department of the State where this policy is delivered.
>
> 1) Mortality Rates – The current mortality rates for the policy are based on the insured's attained age, sex, and mortality class. **[Defendant] will determine the current mortality rates based on [Defendant's] expectations as to future mortality experience.** Any change in mortality rates will apply to all insured of the same mortality class. In no case will mortality rates for an insured in a standard mortality class ever be greater than those shown in the Table of Guaranteed Maximum Mortality Rates in this policy. Such guaranteed rates are based on the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday. The guaranteed rates for insureds classified as substandard are based on percentage multiples of the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday.
>
> 2) Mortality Class Factors – The mortality class(es) shown on the Policy Specifications Page, and on any Policy Amendments, are the result of [Defendant's] underwriting [the insured's] insurability. The Factors shown with each mortality class are used to determine the mortality charge.

Ex. A at p. 12 (emphasis supplied).

27.     Under the explicit terms of the Policy, therefore, Defendant is authorized to use only the insured's age, sex, mortality class, and its expectations as to future mortality experience when determining the Policy's Mortality Rates. Ex. A at p. 12.

28.     Age, sex, and mortality class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

6

29.     An insured would reasonably read age, sex, and mortality class, in combination with the disclosure that rates are determined based on Defendant's expectations as to future mortality experience and understand that only mortality expectations are used to determine Mortality Rates.

30.     By specifically identifying age, sex, and mortality class as the defining components of the Mortality Rate, the parties agreed that mortality expectations are what determine Mortality Rates under the Policy, and this is further confirmed where the Policy states that "[w]e will determine the current mortality rates based on our expectations as to future mortality experience."

31.     Like the Policy, the Class Policies disclose similar periodic deductions that Defendant is authorized to take from policyholder Cash Values including, specifically, Mortality Charges that are calculated using rates that Defendant must determine based on specified factors, and that can be adjusted based on Defendant's expectations as to future mortality experience.

32.     Like the Policy, the Class Policies also disclose separate, monthly administrative charges or deductions that Defendant sets in fixed amounts.

33.     Although the Policy and Class Policies authorize Defendant to use only certain, specified factors in determining monthly Mortality Rates, Defendant uses other factors, not authorized by the Policy and Class Policies, when determining those rates, including, without limitation:

        a.   Expense experience;

        b.   Persistency;

        c.   Taxes;

        d.   Profit assumptions;

        e.   Investment Earnings;

7

    f.  Capital and reserve requirements, and

    g.  Other unspecified factors.

34.    By including these other factors in monthly Mortality Rates, Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policy and Class Policies and, as a result, withdraws Cost of Insurance Charges from the Cash Value in amounts greater than those authorized by the Policy and Class Policies.

35.    By loading monthly Mortality Rates with unauthorized factors, Defendant repeatedly and continuously breaches the Policy and Class Policies and impermissibly inflates those rates.

36.    As a direct and proximate result of Defendant's breaches, Plaintiff and the Class have been damaged and those damages are continuing in nature in that Defendant has deducted and will deduct Cost of Insurance Charges from the Cash Values of Plaintiff and the Class in amounts not authorized by the Policy or Class Policies.

37.    By loading monthly Mortality Rates with undisclosed factors, including without limitation, maintenance, administrative, and other expense factors, Defendant also repeatedly and continuously breaches the Administrative Fee provision of the Policy and Class Policies by impermissibly deducting administrative fees from the Cash Values of Plaintiff and the Class in amounts in excess of the fixed and maximum administrative fees expressly authorized by their policies.

38.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values of Plaintiff and the Class in amounts not authorized by the Policy and Class Policies.

39.     Each of Defendant's past and future expense deductions, including without limitation, deductions for maintenance, administrative, and other expenses, from Plaintiff's Cash Values constitutes a separate breach of contract.

40.     The nature of Defendant's conduct is such that Plaintiff and each member of the Class would be unaware that Defendant was engaging in wrongdoing by taking inflated charges and improper amounts from Cash Values.   Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Policy and Class Policies.   The monthly Mortality Rates actually used to calculate the Mortality Charge are not disclosed to policy owners, nor are the components or factors that comprise those rates.   Even if they were, Plaintiff and the Class would lack the knowledge, experience, and training to reasonably ascertain how Defendant calculated the rates and charges.

41.     Defendant was aware that Plaintiff and each member of the Class did not know about the improper deductions because of its superior knowledge of the aforementioned computations.   Defendant sent Plaintiff annual statements each year that identified each month's Cost of Insurance Charge while affirmatively concealing the factors Defendant used to calculate the Mortality Rates.   Concealment of its conduct and failure to disclose its conduct to Plaintiff and the Class constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff and the Class.   Plaintiff did not learn of Defendant's breaches of the Policy and conversions supporting Plaintiff's claims until after she engaged counsel and consulted an actuarial expert.

42.     Plaintiff did not, nor could she have, through reasonable diligence, discovered the facts establishing Defendant's breaches and conversions or the harm caused thereby.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4) and seeks to represent the following Class:

> All persons who own or owned a life insurance policy issued or administered by Defendant, or its predecessors in interest, the terms of which provide or provided for: 1) a cost of insurance charge or deduction, which is calculated using a rate that is determined based on the Defendant's mortality expectations; 2) additional but separate policy charges, deductions, or expenses; 3) an investment, interest-bearing, or savings component; and 4) a death benefit.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family. Excluded from the Class is any policy that explicitly discloses all of the factors Defendant used to calculate its rates and charges.

44.     The proposed class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

45.     The persons who fall within the Class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because Class members are geographically dispersed across the country, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

46.     There are questions of law and fact common to the claims of Plaintiff and the Class, including, without limitation:

a. Whether Defendant is permitted by the Class Policies to use factors other than those disclosed in the Class Policies to determine the monthly Mortality Rates to calculate insurance policy deductions;

b. Whether Defendant used factors not specified in the Class Policies when determining the monthly Mortality Rates used to calculate Mortality Charges or deductions;

c. Whether Defendant added or included factors not specified in the Class Policies when determining the monthly Mortality Rates used to calculate Mortality Charges or deductions;

d. Whether Defendant added or included factors unrelated to its mortality expectations in setting and determining rates that the Class Policies provide are "based on" specified mortality factors and no other disclosed factors;

e. Whether Defendant charged amounts in excess of those specifically authorized by the Class Policies;

f. Whether Defendant breached the terms of the Class Policies;

g. Whether the Class sustained damages as a result of Defendant's breaches of contract;

h. Whether the Class is entitled to damages, restitution, and/or other equitable relief as a remedy for Defendant's breaches of contract;

i. Whether Defendant converted Class members' money from their Cash Values;

j. Whether the Class sustained damages as a result of Defendant's conversions;

k. Whether the Class, or some subset of the Class, is entitled to injunctive relief requiring Defendant to make deductions from Cash Values in accordance with the terms of the Class Policies in the future; and

l. Whether the Class, or some subset of the Class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

47.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of

11

consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

48.     Plaintiff's claims are typical of those of the Class in that Class members purchased policies containing the same or similar limitations on the amounts that Defendant could charge its policyholders under the express terms of the Policy and Class Policies.

49.     Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of those she seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

50.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Class to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

## COUNT I: BREACH OF CONTRACT
### (Cost of Insurance Charge)

51.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

52.     Plaintiff and the Class purchased life insurance policies—the Policy and Class Policies—from Defendant.

53.     The Policy and Class Policies are valid and enforceable contracts between Plaintiff and the Class, and Defendant.

54.     Plaintiff and the Class substantially performed their obligations under the terms of the Policy and Class Policies.

55.     By including unauthorized factors in monthly Mortality Rates, Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policy and Class Policies.

56.     Because Defendant calculates Mortality Charges using monthly Mortality Rates that are higher than those authorized by the Policy and Class Policies, Defendant has deducted Cost of Insurance Charges from the Cash Values of Plaintiff and the Class in amounts greater than those authorized by their policies.

57.     Defendant's practice of deducting charges in amounts not authorized by the Policy and Class Policies constitutes a breach of the policies.

58.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

**COUNT II: BREACH OF CONTRACT**
**(Administrative Fee)**

59.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

60.     By loading monthly Mortality Rates with undisclosed administrative expense factors, Defendant impermissibly deducts Administrative Fees from the Cash Values of Plaintiff and the Class in amounts in excess of the fixed and maximum Administrative Fee expressly authorized by their policies.

61.     By deducting unauthorized Administrative Fees from the Cash Values of Plaintiff and the Class, Defendant has breached the Policy and Class Policies.

62.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

**COUNT III: BREACH OF CONTRACT**
**(Improving Mortality Expectations)**

63.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

64.     When setting monthly Mortality Rates, the Policy and Class Policies authorize Defendant to consider only its mortality expectations.

65.     Although mortality expectations have generally improved because people are living longer today than when the Policy and Class Policies were initially priced, Defendant has, on information and belief, failed to lower monthly Mortality Rates for the Policy and Class Policies.

66.     Defendant's failure to lower these rates even though its expectations of future mortality experience improved constitutes a breach of the Policy and Class Policies.

67.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT IV: CONVERSION

68.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

69.     Plaintiff and the Class have a property interest in the funds Defendant deducts from their Cash Values in excess of the amounts permitted by the terms of the Policy and Class Policies.

70.     By deducting Cost of Insurance Charges and Administrative Fees in unauthorized amounts from the Cash Values of Plaintiff and the Class, Defendant exercised wrongful dominion and control over their property to the detriment of the rights of Plaintiff and the Class and misappropriated or misapplied specific funds placed in the custody of Defendant for the benefit of Plaintiff and the Class for use consistent with the terms of the Policy and Class Policies, without authorization or consent, and diverted those funds for its own use.

14

71. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have been damaged, and these damages are continuing in nature.

72. Although requiring expert testimony, the amounts of unauthorized Cost of Insurance Charges and Administrative Fees Defendant took from Plaintiff and the Class are capable of determination, to an identified sum, by comparing Plaintiff's actual Cost of Insurance Charge each month to a Cost of Insurance Charge computed using a monthly Mortality Rate determined using the mortality factors disclosed in the Policy and Class Policies.

73. On behalf of herself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by Defendant's conduct.

74. Defendant intended to cause damage to the Plaintiff and the Class by deducting more than it was authorized to deduct from their Cash Values. Its conduct was, therefore, malicious and Defendant is also guilty of oppression in that its systematic acts of conversion subject Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF

75. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

76. An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

77. Plaintiff contends that Defendant has breached the Policy and Class Policies in the following respects:

15

a. By using unauthorized and undisclosed factors to compute the monthly Mortality Rates under the Policy and Class Policies, Defendant impermissibly increased monthly Mortality Rates for the Policy and the Class Policies and, as a result, withdraws Cost of Insurance Charges from the Cash Values of Plaintiff and the Class in amounts greater than those authorized by the Policy and Class Policies;

b. By inflating monthly Mortality Rates under the Policy and Class Policies with administrative expense factors, including without limitation, maintenance, administrative, and other expense factors, that are not disclosed as being used to determine those rates, Defendant impermissibly deducted Administrative Fees from the Cash Values of Plaintiff and the Class in amounts in excess of the fixed and maximum Administrative Fees expressly authorized by the Policy and Class Policies; and

c. By failing to reduce monthly Mortality Rates even though Defendant's mortality expectations have improved.

78.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies.

79.     Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction temporarily, preliminarily, and permanently enjoining Defendant (i) from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies, and (ii) ordering Defendant to comply with the terms of the Policy and Class Policies in regard to its assessment of charges against Cash Values.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief as follows:

16

(a)     That the Court enter an order certifying this case as a class action under Fed. R. Civ. P. 23, appointing Plaintiff as a representative of the Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to the Class;

(b)     For a judgment against Defendant for the causes of action alleged against it;

(c)     For compensatory damages in an amount to be proven at trial;

(d)     For punitive and exemplary damages;

(e)     For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(f)     For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(g)     For pre- and post-judgment interest at the maximum rate allowed by law;

(h)     For Plaintiff's costs incurred; and

(i)     For such other legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

DATED this 29th of August, 2017.          Respectfully submitted,


By:   /s/ John A. Yanchunis, Trial Counsel

John A. Yanchunis (Florida Bar No. 324681)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602

Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com

Daniel C. Girard (*pro hac vice forthcoming*)
Angelica M. Ornelas (*pro hac vice forthcoming*)
Paige B. Pulley (*pro hac vice forthcoming*)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
dcg@girardgibbs.com
amo@girardgibbs.com
pbp@girardgibbs.com

Norman E. Siegel (*pro hac vice forthcoming*)
Patrick J. Stueve (*pro hac vice forthcoming*)
Ethan M. Lange (*pro hac vice forthcoming*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com
stueve@stuevesiegel.com
lange@stuevesiegel.com

John J. Schirger (*pro hac vice forthcoming*)
Matthew W. Lytle (*pro hac vice forthcoming*)
Joseph M. Feierabend (*pro hac vice forthcoming*)
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

*Attorneys for Plaintiff*

18

EXHIBIT A

POLICY SPECIFICATIONS

INSURED
    PRUDENCE P MASON

FEMALE AGE 33

POLICY NUMBER
    4709952A

BASIC PLAN OF INSURANCE
    FLEXIBLE PREMIUM
        ADJUSTABLE LIFE INSURANCE

INITIAL PREMIUM
    $      75.00

POLICY DATE
    AUGUST 18, 1988

MONTHLY POLICY DAY
    18

MATURITY DATE    *
    AUGUST 18, 2046

DEATH BENEFIT OPTION
    1
    SPECIFIED AMOUNT INCLUDES CASH VALUE

SCHEDULED PREMIUM
    $      75.00
    MODE    MONTHLY (ABC)

SCHEDULE OF POLICY BENEFITS

|  | EFFECTIVE DATE | MORTALITY CLASS | MORTALITY CLASS FACTORS |
|---|---|---|---|
| INITIAL SPECIFIED AMOUNT    $    100,000.00 | POLICY DATE | STD-NON-SMOKER | 100.00% |

| SPECIFIED AMOUNT    $    100,000.00 | | | |
| RIDERS | MONTHLY COST OF INSURANCE PAYABLE | YEARS PAYABLE | MATURITY/* EXPIRY DATE |

* NOTE.  IT IS POSSIBLE FOR BENEFITS TO END PRIOR TO THIS DATE WHEN EITHER
NO PREMIUMS ARE PAID AFTER THE INITIAL PREMIUM OR ADDITIONAL PREMIUMS AND
CREDITED INTEREST ARE INSUFFICIENT TO CONTINUE THE BENEFIT TO SUCH DATE.
REFER TO THE STATEMENT OF POLICY COST AND BENEFIT INFORMATION FOR AN
ILLUSTRATION OF PROJECTED POLICY VALUES AND EXPIRATION DATES BASED ON
CURRENT AND GUARANTEED FACTORS.

DUPLICATE

380-410

POLICY SPECIFICATIONS (CONTINUED)

MONTHLY NO-LAPSE PREMIUM                    $                    45.01

NO-LAPSE-PERIOD                    08-18-88  TO  08-18-90

BASE PREMIUM                    $                    483.00

THE FULL SURRENDER CHARGE IS EQUAL TO 100% OF FIRST YEAR
PREMIUM UP TO THE BASE PREMIUM (SHOWN ABOVE) AND 10% OF
FIRST YEAR PREMIUM IN EXCESS OF THE BASE PREMIUM.  HOWEVER,
THE FULL SURRENDER CHARGE WILL NOT EXCEED $    2,367.00  ON
THE INITIAL SPECIFIED AMOUNT.

GUIDELINE SINGLE PREMIUM              $              14,009.63

GUIDELINE ANNUAL PREMIUM              $              1,215.48

MAXIMUM PREMIUM LIMITATION — THE TOTAL PREMIUMS PAID CANNOT EXCEED
     THE GREATER OF THE GUIDELINE SINGLE PREMIUM OR THE SUM OF THE
     GUIDELINE ANNUAL PREMIUMS.

FOR A MORE DETAILED EXPLANATION OF THE MONTHLY NO-LAPSE PREMIUM
AND THE NO-LAPSE PERIOD PLEASE SEE THE NO-LAPSE CONDITIONS
PROVISION.  FOR AN EXPLANATION OF THE BASE PREMIUM AND
ADDITIONAL SURRENDER CHARGE REFER TO THE FULL SURRENDER
CHARGE PROVISION.





PAGE  2 OF  2

**List of
Policy
Provisions**

General Provisions
    Insuring Agreement
    Contract
    Application
    Owner
    Contingent Owner
    Change of Owner or Contingent Owner
    Collateral Assignment
    Beneficiary
    Change of Beneficiary
    Incontestability
    Suicide Exclusion
    Policy Proceeds
    Misstatement of Age or Sex
    Effective Date of Coverage
    Maturity Date
    Processing Date
    Policy Change
    Annual Report
    No Dividends
    Projections of Benefits/Values
    Calculations
    Termination

Premium Provisions
    Initial Premium
    Scheduled Premiums
    Unscheduled Premiums
    Maximum Premium Limitation
    No-Lapse Conditions
    Grace Period
    Reinstatement

Insurance Coverage Provisions
    Death Benefit
    Change of Death Benefit Option
    Changes in Specified Amount

Nonforfeiture Provisions
    Cash Value
    Interest Rate
    Monthly Deduction
    Cost of Insurance
    Mortality Charge
    Continuation of Insurance

Nonforfeiture Provisions (continued)
    Partial Surrender
    Full Surrender Charge
    Full Surrender Value
    Surrender Requirements
    Policy Loan
    Loan Interest
    Repayment

Optional Settlement Provisions
    Optional Settlement Plans
    Provisions of Optional Settlement Plans

Optional Settlement Plan Tables

Table of Guaranteed Maximum Mortality Rates

**READ YOUR POLICY CAREFULLY**
**IT IS A LEGAL CONTRACT BETWEEN YOU AND US**

## GENERAL PROVISIONS

**Insuring Agreement** — We will pay the *beneficiary* the death benefit subject to the terms of this policy, when we receive due proof that the *insured* died prior to the *maturity date,* and while this policy was *in effect.*

We will pay you the cash value less any *indebtedness* if the *insured* is living on the *maturity date* and this policy is still *in effect.*

**Contract** — We have issued this policy in consideration of the required initial premium payment and the application. The policy, with all its pages and cover, the attached copies of the application, any supplemental applications and any attached amendments or riders form the entire contract.

No agent, nor anyone other than one of our officers, has the power to change this contract or waive any of our rights or requirements.

**Application** — In issuing this policy, we have relied on statements in the application. All statements in the application, and any supplemental applications, are assumed to be true and complete to the best of the knowledge and belief of the person making them. No statement will be used by us to void the policy or deny a claim unless that statement is a material misrepresentation and is in the application or supplemental applications.

**Owner** — The owner is the *insured,* unless otherwise specified in the application. You may exercise all policy rights and privileges, while the *insured* is living, without the consent of any revocable *beneficiary.*

**Contingent Owner** — If you are not the *insured,* you may name a contingent owner. If you die before the *insured,* the contingent owner named in the application will become the owner and will possess all the rights of an owner. If the contingent owner is dead, or if no contingent owner has been named at your death, your rights as owner will go to your estate.

**Change of Owner or Contingent Owner** — You may change the owner or contingent owner of this policy. The change requires satisfactory written notice to us. After we record it, the change is effective from the date you signed the notice. The *insured* does not have to be living when we record a change of owner for it to be effective. You do not have to be living when we record a change of contingent owner for it to be effective. We will not be responsible for any payment we make or other action we take before we record any change.

**Collateral Assignment** — You may assign this policy as collateral. We are not responsible for the validity or effect of any collateral assignment. The interest of any revocable *beneficiary* will be subject to the terms of the assignment. We will not be responsible for knowledge of any assignment until we record your written notice to us.

**Beneficiary** — The *beneficiary* of this policy is named in the application. If there is no named *beneficiary* when the *insured* dies, we will pay the death benefit to you or your estate. If any *beneficiary* dies at the same time or within ten days of the *insured*, the death benefit will be paid as though that *beneficiary* died before the *insured*.

**Change of Beneficiary** — You may change the *beneficiary*. The change requires satisfactory written notice to us. After we record it, the change is effective from the date you signed the notice. The *insured* does not have to be living at the time we record the change for it to be effective. We will not be responsible for any payment we make or other action we take before we record the change.

**Incontestability** — Except for failure to pay premiums, we will not contest the validity of this policy after it has been *in effect* during the *insured's* lifetime for two years from the *policy date*. This will not apply to any riders attached to this policy.

Any increase in the *specified amount* after the *policy date* will be incontestable only after such increase has been in force during the *insured's* lifetime for two years following the effective date of such increase.

**Suicide Exclusion** — If the *insured* commits suicide within two years from the *policy date*, whether sane or insane, our liability will be limited to the premiums paid prior to the *insured's* death, less any *indebtedness*, less any partial surrenders and less any partial surrender charges.

If the *insured* commits suicide, whether sane or insane, within two years from the effective date of any increase in *specified amount*, our liability with respect to such increase will be limited to the cost of insurance for such increase.

**Policy Proceeds** — Policy proceeds means the amount payable under this policy on the earliest of the following:

1)  the *maturity date;*

2)  full surrender of the policy; or

3)  death of the *insured.*

On the *maturity date*, the policy proceeds will be the cash value less any *indebtedness*. If the policy is surrendered, the policy proceeds will be the surrender value (as described in the Full Surrender Value Provision). At the *insured's* death, the policy proceeds will be the death benefit (as described in the Death Benefit Provision).

**Misstatement of Age or Sex** — If the *insured's age* or sex has been misstated, the policy proceeds will be adjusted by the difference between the monthly deductions actually deducted and the monthly deductions which would have been deducted at the correct *age* or sex. The adjustment will be accummulated at the interest rates that were credited to the cash value.

**Effective Date of Coverage** — The effective date of coverage under this policy is as follows:

1) The *policy date* is the effective date for all coverage provided as a result of the original application.

2) The effective date for any increase or addition to coverage will be the *monthly policy day* on or next following the date we approve your application for the increase or addition. This date will be shown on a Policy Amendment.

**Maturity Date** — The *maturity date*, as shown on the Policy Specifications Page, is the *insured's* age 95.

**Policy Change** — If any change in the policy is made, we will issue a Policy Amendment.

**Annual Report** — At least once a year, we will send you a report which shows the current cash value, surrender value, interest credited, premiums paid, partial surrenders and charges deducted since the last report, and loan activity and status.

**No Dividends** — This is a nonparticipating policy. It does not pay dividends and will not share in our profits or surplus.

**Projections of Benefits/Values** — You may request a projection of illustrative future death benefits and policy values at any time. Your request to us must be in writing. We may charge a service fee up to $10 for this projection. The illustration will be based on:

1) assumptions as to the *specified amount* and future premium payment, as you may specify; and

2) other assumptions as are necessary and agreed upon by you and us.

**Calculations** — Minimum surrender values are based on the 1958 Commissioner's Standard Ordinary Mortality Table, Age Last Birthday, with interest at an effective annual rate of 4½%. A detailed statement of the method of calculating surrender values under this policy has been filed with the Insurance Department of the State in which this policy is delivered. Surrender values under this policy are not less than the minimum required on the *policy date* by the state in which this policy is delivered.

**Termination** — All coverage under this policy will terminate when any one of the following events occurs:

1) You request a full surrender of the policy;

2) The *insured* dies;

3) The policy grace period ends;

4) The policy reaches the *maturity date; or*

5) *Indebtedness* causes the surrender value to equal zero or become negative.

## Premium Provisions

**Initial Premium** — The initial premium is due on the *policy date* and is payable to us in advance. The initial premium is shown on the Policy Specifications Page.

**Scheduled Premiums** — Scheduled premium payments may be made annually, semiannually, quarterly or by automatic bank check. Other modes of payment will be accepted subject to our requirements. The scheduled premium payments are subject to the following minimum amounts, unless our then current rules specify lower amounts:

| Mode of Payment | Scheduled Premium Minimum Amount |
|---|---|
| Annual | $200 |
| Semi-Annual | 125 |
| Quarterly | 75 |
| Automatic Bank Check | 30 |

You may change the frequency and amount of scheduled premiums by sending us a written notice. We reserve the right to limit the amount of any increase of the scheduled premium.

Any premium payment which exceeds the scheduled premium shown on the Policy Specifications Page will be considered an unscheduled premium subject to the following provision.

**Unscheduled Premiums** — You may make unscheduled premium payments of at least $50, unless our then current rules specify a lower amount, at any time prior to the *maturity date*. We reserve the right to limit the frequency and amount of unscheduled premium payments.

380-410

6

10-87

**Maximum Premium Limitation** — In order to conform to requirements of the Internal Revenue Code, we will limit the total amount of premiums, both scheduled and unscheduled, that may be paid during each policy year. The applicable maximum premium limitation is set forth on the Policy Specifications Page or any subsequent Policy Amendment. Because the maximum premium limitation is in part dependent on the *specified amount* for each policy, changes in the *specified amount* may affect this limitation. In the event that a premium is paid that exceeds the maximum premium limitation, we will accept only the portion of the premium up to the maximum limitation and return the excess to you. Thereafter, no additional premiums will be accepted until allowed by the maximum premium limitation set forth in the policy.

**No-Lapse Conditions** — This policy will not lapse as long as its surrender value is large enough to cover each monthly deduction when due. Even if this condition is not met, this policy will not lapse during a no-lapse period if the applicable conditions described below are met.

The initial no-lapse period is a two-year period that starts on the day of issue. A new no-lapse period is a two-year period that starts on an increase date. A new no-lapse period supersedes any existing no-lapse period. An increase date is a monthly policy date on which the specified amount is increased.

The policy will not lapse during a no-lapse period if the accumulated premiums that have been paid as of each monthly date since the start of the no-lapse period are not less than (1) times (2) plus (3) plus (4) where:

    (1) is the monthly no-lapse premium shown on the Policy Specifications page or Policy Amendment;

    (2) is the number of monthly dates which have occurred starting with the monthly date at the beginning of the no-lapse period;

    (3) is the increase in indebtedness during the no-lapse period; and

    (4) is the amount of cash value surrendered during the no-lapse period.

If the insured is receiving disability benefits under a rider attached to this policy, any existing no-lapse period will be suspended on the monthly policy date following the start of disability. Such no-lapse period will resume on the monthly date following the end of disability.

**Grace Period** — If the surrender value is not sufficient to cover the monthly deduction when due, a grace period of 61 days will be allowed for the payment of a premium sufficient to cover the monthly deduction. We will mail notice of such premium due to the last known address we have recorded for you at least 30 days prior to the end of the grace period. The policy will continue to be *in effect* during this grace period. If the *insured* dies during the grace period, we will deduct any monthly deductions that are due from the policy proceeds.

If a no-lapse period is in effect, a 61 day grace period will go into effect on the monthly policy day on which:

(1) the surrender value is not sufficient to cover the monthly deduction when due; and

(2) the applicable no-lapse conditions are not met.

A premium sufficient to cover the monthly no-lapse premium must be received.

If the required premium is still unpaid at the end of the grace period, the premium is in default and all coverage will terminate without value.

**Reinstatement** — After a premium default, you may request that the policy be put back *in effect*. We will reinstate the policy on the following conditions:

1) your request is in writing and within five years from the date of premium default;

2) we receive proof satisfactory to us that the *insured* is still insurable; and

3) you pay a minimum premium sufficient to keep the policy in force for two *policy months*.

The effective date of a reinstated policy will be the *monthly policy day* on or next following the date we approve your application for reinstatement.

If the applicable no-lapse conditions are not met and this policy lapses during a no-lapse period, this period will be suspended on the date of lapse. It will resume on the date of reinstatement.

**Death Benefit** — Subject to the terms of this policy, the death benefit will be as follows:

Option 1 — If Death Benefit Option 1 is shown on the Policy Specifications Page, the *specified amount* includes the cash value. The benefit will equal the greater of A) or B), where:

A) is the *specified amount* on the date of death; and
B) is an amount calculated as (1) multiplied by (2), where:

(1) is the cash value on the date of death; and
(2) is the applicable percentage shown in the Table of Death Benefit Percentages and is based on the *insured's age* on the date of death.

Case 6:17-cv-01569-PGB-TBS   Document 1-1   Filed 08/29/17   Page 12 of 22 PageID 30

Option 2 — If Death Benefit Option 2 is shown on the Policy Specifications Page, the *specified amount* is in addition to the cash value. The death benefit will equal the greater of A) or B), where:

A)  is the *specified amount* plus the cash value on the date of death; and

B)  is an amount calculated as (1) multiplied by (2), where:

(1)  is the cash value on the date of death; and

(2)  is the applicable percentage shown in the Table of Death Benefit Percentages and is based on the *insured's age* on the date of death.

### Table of Death Benefit Percentages

| Age | % | Age | % | Age | % |
|-----|-----|-----|-----|-------|-----|
| 40 or less | 250 | 56 | 146 | 71 | 113 |
| 41 | 243 | 57 | 142 | 72 | 111 |
| 42 | 236 | 58 | 138 | 73 | 109 |
| 43 | 229 | 59 | 134 | 74 | 107 |
| 44 | 222 | 60 | 130 | 75 | 105 |
| 45 | 215 | | | | |
| | | 61 | 128 | 76-90 | 105 |
| 46 | 209 | 62 | 126 | | |
| 47 | 203 | 63 | 124 | 91 | 104 |
| 48 | 197 | 64 | 122 | 92 | 103 |
| 49 | 191 | 65 | 120 | 93 | 102 |
| 50 | 185 | | | 94 | 101 |
| | | 66 | 119 | 95+ | 100 |
| 51 | 178 | 67 | 118 | | |
| 52 | 171 | 68 | 117 | | |
| 53 | 164 | 69 | 116 | | |
| 54 | 157 | 70 | 115 | | |
| 55 | 150 | | | | |

The death benefit will be reduced by the amount of any *indebtedness* against this policy on the date of death.

**Change of Death Benefit Option** — You may change the Death Benefit Option shown on the Policy Specifications Page upon our acceptance of your written request. Such a change may result in a new *specified amount* and may be subject to evidence of insurability before the change will be made.

**Changes in Specified Amount** — The *specified amount* may be increased or decreased upon your written request subject to the following conditions:

1) No changes in the *specified amount* may be made in the first policy year.

2) The *specified amount* may be changed only one time in any policy year.

3) The *specified amount* may not be less than the minimum shown below, unless our then current rules specify lower amounts, for the age corresponding to the *insured's* attained *age* on the date of the change:

| Insured's Age On Date of Change | Minimum *Specified Amount* |
|---|---|
| 0-44 | $50,000 |
| 45+ | $30,000 |

3) Decreases In Specified Amount — Any decrease will take effect on the *monthly policy day* on or next following the date we receive your written request for the decrease. Decreases will be deducted from the most recent increases in *specified amount*, if any, on a last in/first out basis.

4) Increases In Specified Amount — Any request for an increase must be applied for on a supplemental application. We must also be provided with satisfactory evidence of insurability. When we approve the increase, it will take effect on the next *monthly policy day* following our approval. The effective date of the increased amount will be shown on a Policy Amendment. The surrender value must not be less than the new monthly no-lapse premium.

If the increase in *specified amount* results in a change to the Mortality Class Factors for this policy, the new Factors will be shown on a Policy Amendment. Refer to the Cost of Insurance Provisions for details on how the Factors are determined and applied.

A new surrender charge may be imposed on an increase in *specified amount*. Refer to the Full Surrender Charge Provision for details.

**NONFORFEITURE PROVISIONS**

**Cash Value** — On the *policy date,* the cash value will be 100% of the initial premium payment.

On each *monthly policy day,* the cash value will be calculated as (1) minus (2), plus (3), plus (4), minus (5), minus (6), where:

    (1)  is the cash value on the previous *monthly policy day;*

    (2)  is the monthly deduction for the previous *policy month;*

    (3)  is one *policy month's* interest on the difference between (1) and (2);

    (4)  is 100% of all premiums received for the policy since the previous *monthly policy day,* plus interest from the date we received your premium payment;

    (5)  is the amount of any partial surrender made on the *monthly policy day;* and

    (6)  is the amount of any partial surrender charges or fees made on the *monthly policy day.*

On any day between *monthly policy days,* the cash value will be calculated as (1) minus (2), plus (3), plus (4), where:

    (1)  is the cash value on the preceding *monthly policy day;*

    (2)  is the monthly deduction for that *policy month;*

    (3)  is interest on the difference between (1) and (2) for the number of days since the preceding *monthly policy day;* and

    (4)  is 100% of all premiums received since the preceding *monthly policy day,* plus interest from the date we received your premium payment.

**Interest Rate** — The guaranteed interest rate applied in the calculation of cash values is applied on a daily basis, at a daily rate, which is equivalent to an effective annual rate of 4½%.

We may apply interest in addition to the guaranteed rate in calculating cash values at such increased rates and in such manner as we may determine. We will not credit additional interest on that part of the cash value which equals any *indebtedness* against this policy.

**Monthly Deduction** — The monthly deduction for a *policy month* will be calculated as (1) plus (2) where:

(1)  is the cost of insurance for this policy and any additional benefits provided by rider for the *policy month*; and

(2)  is a $5 administrative fee.

**Cost of Insurance** — The cost of insurance for the policy is determined on a *policy month* basis. Such cost is calculated as (1) multiplied by the result of (2) minus (3), where:

(1)  is the mortality charge (as described below);

(2)  is the death benefit at the beginning of the *policy month* divided by 1.0036748; and

(3)  is the cash value at the beginning of the *policy month*, less the administrative fee for that *policy month* and the cost of insurance for any riders.

The cost of insurance for any rider is calculated as shown in the Cost of Insurance Provision of the rider.

**Mortality Charge** — The monthly mortality charge is based on our current Mortality Rates and the Mortality Class Factors for your policy. (These two parts to the mortality charge are described below). A detailed statement of the formulas used to calculate the monthly mortality charge has been filed with the Insurance Department of the State where this policy is delivered.

1)  Mortality Rates — The current mortality rates for the policy are based on the *insured's* attained *age*, sex, and mortality class. We will determine the current mortality rates based on our expectations as to future mortality experience. Any change in mortality rates will apply to all *insureds* of the same mortality class. In no case will mortality rates for an *insured* in a standard mortality class ever be greater than those shown in the Table of Guaranteed Maximum Mortality Rates in this policy. Such guaranteed rates are based on the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday. The guaranteed rates for *insureds* classified as substandard are based on percentage multiples of the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday.

2)  Mortality Class Factors — The mortality class(es) shown on the Policy Specifications Page, and on any Policy Amendments, are the result of our underwriting your insurability. The Factors shown with each mortality class are used to determine the mortality charge.

**Continuation of Insurance** — If you stop paying premiums, this policy will remain *in effect* until the surrender value is insufficient to cover the monthly deduction, as provided in the Grace Period Provision.

This provision will not continue the policy beyond the *maturity date* or continue any rider beyond its termination date, as provided in the rider.

**Partial Surrender** — You may request a partial surrender of this policy upon written request to us, subject to the terms of this and the Surrender Requirements Provision.

A partial surrender charge may be incurred on each partial surrender. The partial surrender charge will be calculated as the result of (1) minus (2) multiplied by the result of (3) divided by (4), where:

(1) is the full surrender charge on the date of the partial surrender;

(2) is the sum of all partial surrender charges deducted previously;

(3) is the amount of the partial surrender; and

(4) is the surrender value on the date of the partial surrender.

If the sum of all partial surrender charges, deducted previously, exceeds the full surrender charge, there will be no partial surrender charge.

If there is no partial surrender charge as calculated above, then a partial surrender fee of $25 will be incurred on each partial surrender.

The cash value and death benefit will be reduced by the sum of any partial surrender, partial surrender charges and partial surrender fees. If the policy is on Death Benefit Option 1, the *specified amount* will also decrease by the sum of any partial surrender, partial surrender charges and partial surrender fees. The *specified amount* remaining after a partial surrender must be at least $10,000. We reserve the right to limit the number of partial surrenders made in a policy year.

The surrender value remaining after any partial surrender must be at least $300, unless our then current rules specify a lower amount.

**Full Surrender Charge** — The full surrender charge is calculated as (1) multiplied by (2), plus (3) multiplied by (2), where:

(1) is 100% of the premium received in the first policy year up to the Base Premium shown on the Specifications Page plus 10% of first year premiums over the Base Premium, subject to the maximum shown on the Specifications Page.

(2) is the applicable percentage shown in the following table where Year is the number of full policy years from the original *policy date* or from the policy *anniversary* on or preceding the date of each increase in *specified amount* to the date of surrender.

| Year | % | Year | % |
|------|-----|------|-----|
| 0 | 100 | 5 | 85 |
| 1 | 100 | 6 | 80 |
| 2 | 100 | 7 | 60 |
| 3 | 95 | 8 | 40 |
| 4 | 90 | 9 | 20 |
|  |  | 10+ | 0 |

(3) is the additional surrender charge shown on any Policy Amendments that may occur following each increase in *specified amount*. A detailed statement of the method of calculating surrender charges has been filed with the Insurance Department of the State where this policy is delivered.

A decrease in *specified amount* will not change any existing surrender charges.

We will waive any surrender charges if the policy has been in force for 10 years and Optional Settlement Plan 2 is elected.

**Full Surrender Value** — You may surrender this policy for its full surrender value upon written request to us, subject to the terms of this and the Surrender Requirements Provision. If you make a full surrender, the policy will terminate.

The full surrender value will be calculated as (1) minus (2), where:

(1) is the cash value on the date of surrender, less any *indebtedness* against this policy.

(2) is the full surrender charge on the date of surrender, less the sum of all partial surrender charges deducted previously.

If the sum of all partial surrender charges exceeds the full surrender charge, there will be no full surrender charge.

**Surrender Requirements** — Your request for a partial or full surrender of this policy is subject to the following requirements:

1) it must be effective on a *monthly policy day;*

2) it must be made during the *insured's* lifetime;

3) it must be made before the *maturity date;* and

4) it must be made while the policy is *in effect.*

We reserve the right to defer payment of the amount of any partial or full surrender for up to six months from the date we receive your request for a surrender.

**Policy Loan** — You may borrow any existing surrender value under this policy at any time while the policy is *in effect.* Your request for a policy loan must be in writing. The loan will be made on the sole security of this policy and proper assignment of the policy to us.

We reserve the right to defer making a policy loan for up to six months from the date we receive your written request for the loan.

**Loan Interest** — We charge an annual effective interest rate of 8% on all policy loans. Interest will be due at the end of each policy year. Unpaid interest will be added to the existing *indebtedness* and will be charged interest at the same rate.

**Repayment** — *Indebtedness* may be repaid in part or in full at any time while this policy is *in effect.* If not repaid, it will be deducted from the policy proceeds.

If the *indebtedness* causes the surrender value to equal zero or become negative the policy will terminate. We will mail notice to you and any collateral assignee in our records at the last known address we have for you and the assignee at least 30 days prior to termination.

## OPTIONAL SETTLEMENT PROVISIONS

**Optional Settlement Plans** — Any policy proceeds payable under this policy will be paid in one sum unless one of the following plans is chosen. While the *insured* is living, you may request one of the plans. If no plan has been requested at the *insured's* death, the *beneficiary* may request a plan. The request requires satisfactory written notice to us. After we record it, the request is effective from the date the notice was signed. We will not be responsible for any payment we make or other action we take before we record your request.

Plan 1:  Proceeds Held At Interest — We will hold the policy proceeds and make payments at the times and in the amount agreed upon, as long as any policy proceeds remain. We will credit the policy proceeds we hold with an annual effective interest rate of at least 3½%.

When the *payee* dies, any remaining policy proceeds will be paid to his or her estate, unless otherwise specified.

Plan 2:  Lifetime Payments With A Guarantee — We will make monthly payments for as long as the *payee* lives. A guaranteed number of payments may be chosen. If the *payee* dies before the guaranteed number of payments has been made, we will continue payments until the guaranteed number has been made.

Guaranteed amounts of monthly payments for each plan are shown in the Optional Settlement Plan Tables. The minimum amount we will hold under any settlement plan is $5,000. The minimum payment is $50. We will consider special requests.

**Provisions of Optional Settlement Plans** — Proof of *age* and continued survival will be required from the *payee*.

The policy proceeds under one of the settlement plans may not be assigned or transferred.

The policy proceeds we hold, as well as any payments we make, are protected from the claims of any *payee's* creditors to the extent permitted by law.

Case 6:17-cv-01569-PGB-TBS   Document 1-1   Filed 08/29/17   Page 20 of 22 PageID 38

# Optional Settlement Plan Tables
## PLAN 1

Guaranteed amounts of level monthly payments per $1,000 of policy proceeds which use up the policy proceeds.

| No. of Yrs. Payable | Mthly. Pymts. | No. of Yrs. Payable | Mthly. Pymts. | No. of Yrs. Payable | Mthly. Pymts. | No. of Yrs. Payable | Mthly. Pymts. | No. of Yrs. Payable | Mthly. Pymts. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.65 | 7 | $13.38 | 13 | $7.94 | 19 | $5.97 | 25 | $4.96 |
| 2 | 43.05 | 8 | 11.90 | 14 | 7.49 | 20 | 5.75 | 26 | 4.84 |
| 3 | 29.19 | 9 | 10.75 | 15 | 7.10 | 21 | 5.56 | 27 | 4.73 |
| 4 | 22.27 | 10 | 9.83 | 16 | 6.76 | 22 | 5.39 | 28 | 4.63 |
| 5 | 18.12 | 11 | 9.09 | 17 | 6.47 | 23 | 5.24 | 29 | 4.53 |
| 6 | 15.35 | 12 | 8.46 | 18 | 6.20 | 24 | 5.09 | 30 | 4.45 |

## PLAN 2

The Table is based on the *payee's* adjusted age. To find the adjusted age, subtract one year from the *payee's* actual age on the date of the first payment for each 15 years since the *policy date*. The Table shows the guaranteed amounts of level monthly payments per $1,000 of policy proceeds.

| Adjusted Age of Payee | MALE | | FEMALE | | Adjusted Age of Payee | MALE | | FEMALE | |
|---|---|---|---|---|---|---|---|---|---|
| | 10 Year Guar. | 20 Year Guar. | 10 Year Guar. | 20 Year Guar. | | 10 Year Guar. | 20 Year Guar. | 10 Year Guar. | 20 Year Guar. |
| 25 | $3.46 | $3.45 | $3.35 | $3.34 | 50 | $4.68 | $4.47 | $4.30 | $4.21 |
| 26 | 3.49 | 3.47 | 3.37 | 3.36 | 51 | 4.76 | 4.53 | 4.37 | 4.27 |
| 27 | 3.51 | 3.50 | 3.39 | 3.38 | 52 | 4.85 | 4.59 | 4.45 | 4.33 |
| 28 | 3.54 | 3.52 | 3.41 | 3.40 | 53 | 4.94 | 4.65 | 4.52 | 4.39 |
| 29 | 3.57 | 3.55 | 3.43 | 3.42 | 54 | 5.03 | 4.71 | 4.61 | 4.45 |
| 30 | 3.60 | 3.58 | 3.46 | 3.45 | 55 | 5.13 | 4.78 | 4.69 | 4.52 |
| 31 | 3.63 | 3.61 | 3.48 | 3.47 | 56 | 5.24 | 4.84 | 4.78 | 4.59 |
| 32 | 3.67 | 3.64 | 3.51 | 3.50 | 57 | 5.34 | 4.91 | 4.87 | 4.66 |
| 33 | 3.70 | 3.68 | 3.54 | 3.52 | 58 | 5.46 | 4.97 | 4.97 | 4.73 |
| 34 | 3.74 | 3.71 | 3.57 | 3.55 | 59 | 5.58 | 5.04 | 5.08 | 4.80 |
| 35 | 3.78 | 3.75 | 3.60 | 3.58 | 60 | 5.70 | 5.10 | 5.19 | 4.88 |
| 36 | 3.82 | 3.78 | 3.63 | 3.61 | 61 | 5.83 | 5.17 | 5.30 | 4.95 |
| 37 | 3.87 | 3.82 | 3.66 | 3.64 | 62 | 5.97 | 5.23 | 5.43 | 5.02 |
| 38 | 3.92 | 3.86 | 3.70 | 3.68 | 63 | 6.11 | 5.29 | 5.56 | 5.10 |
| 39 | 3.96 | 3.91 | 3.74 | 3.71 | 64 | 6.26 | 5.35 | 5.70 | 5.17 |
| 40 | 4.02 | 3.95 | 3.78 | 3.75 | 65 | 6.41 | 5.40 | 5.84 | 5.24 |
| 41 | 4.07 | 3.99 | 3.82 | 3.79 | 66 | 6.57 | 5.45 | 6.00 | 5.31 |
| 42 | 4.13 | 4.04 | 3.86 | 3.83 | 67 | 6.74 | 5.50 | 6.17 | 5.37 |
| 43 | 4.19 | 4.09 | 3.91 | 3.87 | 68 | 6.91 | 5.54 | 6.34 | 5.43 |
| 44 | 4.25 | 4.14 | 3.96 | 3.91 | 69 | 7.09 | 5.58 | 6.53 | 5.49 |
| 45 | 4.31 | 4.19 | 4.01 | 3.96 | 70 | 7.27 | 5.62 | 6.72 | 5.53 |
| 46 | 4.38 | 4.24 | 4.06 | 4.00 | 71 | 7.46 | 5.65 | 6.92 | 5.58 |
| 47 | 4.45 | 4.30 | 4.12 | 4.05 | 72 | 7.65 | 5.67 | 7.13 | 5.61 |
| 48 | 4.52 | 4.35 | 4.18 | 4.10 | 73 | 7.83 | 5.69 | 7.34 | 5.64 |
| 49 | 4.60 | 4.41 | 4.24 | 4.16 | 74 | 8.02 | 5.71 | 7.55 | 5.67 |

# TABLE OF GUARANTEED MAXIMUM MORTALITY RATES
## STANDARD MORTALITY CLASS
## MALE

| Attained Age | Monthly Rate Per $1,000 | Attained Age | Monthly Rate Per $1,000 | Attained Age | Monthly Rate Per $1,000 |
|---|---|---|---|---|---|
| 0 | $.36926 | 32 | $ .19045 | 64 | $ 2.53768 |
| 1 | .13669 | 33 | .19671 | 65 | 2.77608 |
| 2 | .12419 | 34 | .20462 | 66 | 3.03928 |
| 3 | .11918 | 35 | .21463 | 67 | 3.32978 |
| 4 | .11459 | 36 | .22671 | 68 | 3.64685 |
| 5 | .11043 | 37 | .24213 | 69 | 3.98676 |
| 6 | .10669 | 38 | .26088 | 70 | 4.34500 |
| 7 | .10376 | 39 | .28256 | 71 | 4.71692 |
| 8 | .10167 | 40 | .30716 | 72 | 5.09967 |
| 9 | .10084 | 41 | .33384 | 73 | 5.49760 |
| 10 | .10168 | 42 | .36260 | 74 | 5.92258 |
| 11 | .10376 | 43 | .39386 | 75 | 6.38757 |
| 12 | .10751 | 44 | .42806 | 76 | 6.90619 |
| 13 | .11293 | 45 | .46600 | 77 | 7.49028 |
| 14 | .11876 | 46 | .50810 | 78 | 8.14300 |
| 15 | .12502 | 47 | .55482 | 79 | 8.85700 |
| 16 | .13168 | 48 | .60653 | 80 | 9.62445 |
| 17 | .13793 | 49 | .66366 | 81 | 10.43681 |
| 18 | .14294 | 50 | .72664 | 82 | 11.28617 |
| 19 | .14710 | 51 | .79505 | 83 | 12.17113 |
| 20 | .15086 | 52 | .86931 | 84 | 13.09630 |
| 21 | .15377 | 53 | .95025 | 85 | 14.06747 |
| 22 | .15627 | 54 | 1.03830 | 86 | 15.09034 |
| 23 | .15836 | 55 | 1.13470 | 87 | 16.17587 |
| 24 | .16002 | 56 | 1.24073 | 88 | 17.34343 |
| 25 | .16211 | 57 | 1.35719 | 89 | 18.62108 |
| 26 | .16461 | 58 | 1.48455 | 90 | 20.04580 |
| 27 | .16752 | 59 | 1.62403 | 91 | 21.66244 |
| 28 | .17127 | 60 | 1.77650 | 92 | 23.52590 |
| 29 | .17544 | 61 | 1.94238 | 93 | 25.69963 |
| 30 | .18003 | 62 | 2.12333 | 94 | 28.33894 |
| 31 | .18503 | 63 | 2.32107 | | |

# TABLE OF GUARANTEED MAXIMUM MORTALITY RATES
## STANDARD MORTALITY CLASS
### FEMALE

| Attained Age | Monthly Rate Per $1,000 | Attained Age | Monthly Rate Per $1,000 | Attained Age | Monthly Rate Per $1,000 |
|---|---|---|---|---|---|
| 0 | $.32862 | 32 | $ .17544 | 64 | $ 1.94238 |
| 1 | .12836 | 33 | .18003 | 65 | 2.12333 |
| 2 | .11502 | 34 | .18503 | 66 | 2.32107 |
| 3 | .11001 | 35 | .19045 | 67 | 2.53768 |
| 4 | .10543 | 36 | .19671 | 68 | 2.77608 |
| 5 | .10126 | 37 | .20462 | 69 | 3.03928 |
| 6 | .09751 | 38 | .21463 | 70 | 3.32978 |
| 7 | .09459 | 39 | .22671 | 71 | 3.64685 |
| 8 | .09293 | 40 | .24213 | 72 | 3.98676 |
| 9 | .09250 | 41 | .26088 | 73 | 4.34500 |
| 10 | .09293 | 42 | .28256 | 74 | 4.71692 |
| 11 | .09418 | 43 | .30716 | 75 | 5.09967 |
| 12 | .09625 | 44 | .33384 | 76 | 5.49760 |
| 13 | .09918 | 45 | .36260 | 77 | 5.92258 |
| 14 | .10293 | 46 | .39386 | 78 | 6.38757 |
| 15 | .10751 | 47 | .42806 | 79 | 6.90619 |
| 16 | .11293 | 48 | .46600 | 80 | 7.49028 |
| 17 | .11876 | 49 | .50810 | 81 | 8.14300 |
| 18 | .12502 | 50 | .55482 | 82 | 8.85700 |
| 19 | .13168 | 51 | .60653 | 83 | 9.62445 |
| 20 | .13793 | 52 | .66366 | 84 | 10.43681 |
| 21 | .14294 | 53 | .72664 | 85 | 11.28617 |
| 22 | .14710 | 54 | .79505 | 86 | 12.17113 |
| 23 | .15086 | 55 | .86931 | 87 | 13.09630 |
| 24 | .15377 | 56 | .95025 | 88 | 14.06747 |
| 25 | .15627 | 57 | 1.03830 | 89 | 15.09034 |
| 26 | .15836 | 58 | 1.13470 | 90 | 16.17587 |
| 27 | .16002 | 59 | 1.24073 | 91 | 17.34343 |
| 28 | .16211 | 60 | 1.35719 | 92 | 18.62108 |
| 29 | .16461 | 61 | 1.48455 | 93 | 20.04580 |
| 30 | .16752 | 62 | 1.62403 | 94 | 21.66244 |
| 31 | .17127 | 63 | 1.77650 | | |

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PRUDENCE F. MAXON, Individually and ) On Behalf Of All Others Similarly Situated | SENTRY LIFE INSURANCE COMPANY |

| (b) County of Residence of First Listed Plaintiff    Lake County, FL | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Morgan & Morgan Complex Litigation Group<br>201 N. Franklin Street, 7th Floor, Tampa, FL 33602<br>813.223.5505 | Attorneys *(If Known)* |
|---|---|

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

◻ 1  U.S. Government Plaintiff

◻ 3  Federal Question
    *(U.S. Government Not a Party)*

◻ 2  U.S. Government Defendant

☒ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ◻ 1 | Incorporated or Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - | of Property 21 USC 881 | ◻ 423 Withdrawal | ◻ 376 Qui Tam (31 USC |
| ◻ 130 Miller Act | ◻ 315 Airplane Product | Product Liability | ◻ 690 Other | 28 USC 157 | 3729(a)) |
| ◻ 140 Negotiable Instrument | Liability | ◻ 367 Health Care/ | | | ◻ 400 State Reapportionment |
| ◻ 150 Recovery of Overpayment | ◻ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ◻ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ◻ 820 Copyrights | ◻ 430 Banks and Banking |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' | Product Liability | | ◻ 830 Patent | ◻ 450 Commerce |
| ◻ 152 Recovery of Defaulted | Liability | ◻ 368 Asbestos Personal | | ◻ 840 Trademark | ◻ 460 Deportation |
| Student Loans | ◻ 340 Marine | Injury Product | | | ◻ 470 Racketeer Influenced and |
| (Excludes Veterans) | ◻ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ◻ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ◻ 710 Fair Labor Standards | ◻ 861 HIA (1395ff) | ◻ 480 Consumer Credit |
| of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud | Act | ◻ 862 Black Lung (923) | ◻ 490 Cable/Sat TV |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle | ◻ 371 Truth in Lending | ◻ 720 Labor/Management | ◻ 863 DIWC/DIWW (405(g)) | ◻ 850 Securities/Commodities/ |
| ◻ 190 Other Contract | Product Liability | ◻ 380 Other Personal | Relations | ◻ 864 SSID Title XVI | Exchange |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal | Property Damage | ◻ 740 Railway Labor Act | ◻ 865 RSI (405(g)) | ◻ 890 Other Statutory Actions |
| ◻ 196 Franchise | Injury | ◻ 385 Property Damage | ◻ 751 Family and Medical | | ◻ 891 Agricultural Acts |
| | ◻ 362 Personal Injury - | Product Liability | Leave Act | | ◻ 893 Environmental Matters |
| | Medical Malpractice | | ◻ 790 Other Labor Litigation | | ◻ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ◻ 870 Taxes (U.S. Plaintiff | ◻ 896 Arbitration |
| ◻ 220 Foreclosure | ◻ 441 Voting | ◻ 463 Alien Detainee | | or Defendant) | ◻ 899 Administrative Procedure |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 510 Motions to Vacate | | ◻ 871 IRS—Third Party | Act/Review or Appeal of |
| ◻ 240 Torts to Land | ◻ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ◻ 245 Tort Product Liability | Accommodations | ◻ 530 General | | | ◻ 950 Constitutionality of |
| ◻ 290 All Other Real Property | ◻ 445 Amer. w/Disabilities - | ◻ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ◻ 462 Naturalization Application | | |
| | ◻ 446 Amer. w/Disabilities - | ◻ 540 Mandamus & Other | ◻ 465 Other Immigration | | |
| | Other | ◻ 550 Civil Rights | Actions | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
◻ 2 Removed from State Court
◻ 3 Remanded from Appellate Court
◻ 4 Reinstated or Reopened
◻ 5 Transferred from Another District *(specify)*
◻ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

| **VII. REQUESTED IN COMPLAINT:** | ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | **DEMAND $** 5,000,000.00 | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**  ☒ Yes  ◻ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE | | DOCKET NUMBER |
|---|---|---|---|---|

| DATE 08/29/2017 | SIGNATURE OF ATTORNEY OF RECORD /s/ John A. Yanchunis |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

Print          Save As...          Reset

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.