IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PRUDENCE F. MAXON,
on behalf of herself and all others similarly situated,

                           Plaintiff,                OPINION and ORDER

   v.
                                                       18-cv-254-jdp

SENTRY LIFE INSURANCE COMPANY,

                           Defendant.

---

This is a proposed class action against defendant Sentry Life Insurance Company about the way it sets premiums for its universal life insurance policies, which combine an investment vehicle with a life insurance policy. Plaintiff Prudence Maxon owns a Sentry universal life policy. Under the terms of Maxon's policy, Sentry sets the monthly premiums "based on" certain factors that relate to a "Mortality Charge." Maxon contends that the expressly stated Mortality Charge factors should be the exclusive factors in setting the monthly premiums. Sentry contends that the Mortality Charge factors are only illustrative, and that it can consider other factors in setting the premiums, including its own profitability.

Several motions are before the court, but the main one is Sentry's motion for judgment on the pleadings, Dkt. 92, which the court will grant. Maxon's argument is foreclosed by *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145 (7th Cir. 2013), and *Mai Nhia Thao v. Midland Nat. Life Ins. Co.*, 549 F. App'x 534 (7th Cir. 2013). In those cases, the court of appeals interpreted similar universal life policy language to mean that the mortality-related factors need not be the exclusive determinants of the premiums. The court is not persuaded by Maxon's argument that the Sentry policy language is materially different from that in *Norem* or *Thao*, or that Sentry's alleged rate-setting conduct would warrant a different outcome.

As for the other motions, the court will grant Maxon's motion for leave to file a sur-reply on the motion for judgment on the pleadings. Dkt. 115. Because the court is deciding the case on the merits, the court will deny as moot Maxon's motion for class certification, Dkt. 73, and Sentry's motion for a sur-reply on that motion, Dkt. 124. The court will also deny Maxon's motion for oral argument on the pending motions. Dkt. 126. The parties have adequately explained their positions in the briefs, and oral argument would add unnecessary expense and effort.

ALLEGATIONS OF FACT

The court draws the facts from the Maxon's complaint, Dkt. 1, and accepts them as true for purposes of the motion for judgment on the pleadings. *Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010).

Maxon purchased a "Flexible Premium Adjustable Life Insurance" policy from Sentry in 1988. Maxon is both the owner of the policy and the insured. (Maxon's policy is attached as Exhibit A to the complaint. Dkt. 1-1.) Unlike a standard term life insurance policy, a universal life insurance policy includes both an investment component that provides a cash value and an insurance component that provides a death benefit. Sentry held the cash value of Maxon's policy in an account that earned interest, and the balance in the account could be borrowed, invested, withdrawn as cash, or used to increase the death benefit. Sentry also drew the premiums for the insurance component from the cash value account. The premiums for the insurance component are called the "monthly deduction" in the policy.

Per the terms of the policy, the monthly deduction includes (1) a "Cost of Insurance" charge, and (2) a five-dollar administrative fee. The Cost of Insurance charge is calculated by

multiplying a "Mortality Charge" by the policy's net amount at risk (the amount by which the policy's death benefit exceeds its cash value).

The heart of the dispute concerns the Mortality Charge. The Mortality Charge is defined in the policy as being "based on" two components, "Mortality Rates," and "Mortality Class Factors." The policy refers to Sentry using the pronouns "we" and "our," and the insured is referred to as "the insured," or using "you" and "your." The pertinent definitions provide:

> **Mortality Charge** – The monthly mortality charge is based on our current Mortality Rates and the Mortality Class Factors for your policy. (These two parts to the mortality charge are described below). A detailed statement of the formulas used to calculate the monthly mortality charge has been filed with the Insurance Department of the State where this policy is delivered.
>
>> 1) Mortality Rates – The current mortality rates for the policy are based on the *insured's* attained age, sex, and mortality class. We will determine the current mortality rates based on our expectations as to future mortality experience. Any change in mortality rates will apply to all *insureds* of the same mortality class. In no case will mortality rates for an *insured* in a standard mortality class ever be greater than those shown in the Table of Guaranteed Maximum Mortality Rates in this policy. Such guaranteed rates are based on the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday. The guaranteed rates for *insureds* classified as substandard are based on percentage multiples of the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday.
>>
>> 2) Mortality Class Factors – The mortality class(es) shown on the Policy Specifications Page, and on any Policy Amendments, are the result of our underwriting your insurability. The Factors shown with each mortality class are used to determine the mortality charge.

Dkt. 1-1, at 15 (emphasis in original).

Under the terms of the policy, Sentry sets the amount of the monthly deduction, subject to a cap established by the Guaranteed Maximum Mortality Rates. The maximum rates are set

3

out in tables attached to the policy. Dkt. 1-1, at 21–22. Maxon does not allege that her monthly deduction ever exceeded the guaranteed maximum.

The core issue concerns the use of the term "based on" in the policy. The Mortality Charge is "based on" the Mortality Rate and Mortality Class Factors. And the Mortality Rate is "based on the insured's attained age, sex, and mortality class," and Sentry will determine the mortality rate "based on our expectations as to future mortality experience." In practice, Sentry also used other factors to calculate the mortality rate, including expense experience, persistency, taxes, profit assumptions, investment earnings, capital and reserve requirements, and "other unspecified factors." Dkt. 1, ¶ 33. Sentry did not disclose to Maxon that it was using factors other than those expressly cited in the policy to determine the monthly mortality rate.

Since Maxon purchased the policy, mortality expectations have generally improved because of increased life expectancy. But Sentry has not lowered its mortality rates for Maxon's policy.

The court has jurisdiction over Maxon's claim on the basis of diversity, and it would have diversity over the class action under 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000.

ANALYSIS

The fundamental issue in this case is a question of contract interpretation. Both sides agree that Maxon's policy is a valid and enforceable contract, but they disagree on the meaning of its terms. Neither side contends that the contract is ambiguous. Sentry contends that its interpretation of the contract is correct and decisive, so it moves for judgment on the pleadings under Rule 12(c).

4

Rule 12(c) allows a party to move for judgment after the pleadings are closed. The standards are the same as for motions to dismiss for failure to state a claim under Rule 12(b)(6), but the court considers all the pleadings, not just the complaint. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Judgment on the pleadings is appropriate if the complaint fails to state a plausible claim for relief. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The interpretation of an unambiguous contract is a question of law, so when a case turns on a question of contract interpretation, it is amendable to resolution by a motion for judgment on the pleadings. *Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 842 (N.D. Ill. 2009) (citing *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008).

**A. Breach of contract claims**

The court begins with Maxon's breach of contract claims, which are enumerated as counts I, II and III in her complaint.

As a preliminary matter, the parties dispute whether the policy should be construed under the Wisconsin law or Florida law. But at least for purposes of Sentry's motion for judgment on the pleadings, the parties agree that there is no material difference between the law of the two states.[1] So common rules of contract interpretation are sufficient for the purposes of this opinion, and the court need not resolve the choice-of-law issue.

For count I, Maxon contends that when the policy says that the monthly deduction is "based on" certain pricing factors, that list of factors is exhaustive, not illustrative. In other

---

[1] *Norem* and *Thao* applied Illinois law and Wisconsin law, respectively, but the court of appeals detected no material difference in the law of those two states. *See Thao*, 549 F. App'x at 537 n.2.

words, Maxon argues that Sentry is contractually obligated to base the monthly deduction solely on the factors expressly cited in the policy. But the Court of Appeals for the Seventh Circuit has already rejected this argument in cases involving similar policy provisions: *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145 (7th Cir. 2013), and *Mai Nhia Thao v. Midland Nat. Life Ins. Co.*, 549 F. App'x 534 (7th Cir. 2013). Maxon cites many cases outside the Seventh Circuit that have reached the opposite conclusion, particularly *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012). Those extra-circuit cases are of no import. *Thao* is an unpublished order, so it is a non-precedential decision that is not binding here. But *Norem* is a published opinion that states the law of this circuit.[2]

Maxon contends that her policy language is materially different from that in *Norem* and *Thao*. But the differences in policy language defining the cost of the insurance component are minor ones, as shown in the side-by-side comparison set out in Sentry's reply brief. Dkt. 103, at 4. Sentry's policy uses the defined terms "Mortality Charges" and "Mortality Rates," but the definitions in the Sentry policy are substantively the same, or very nearly so, as those in *Norem* and *Thao*.

Maxon is correct that the *Norem* court drew some distinctions between the Norem policy and that in *Yue*. *Norem*, 737 F.3d at 1134. For example, Norem's cost of insurance provision of did not cite "mortality experience" as the basis for cost of insurance. But these are fine points; no fair reader of *Norem* could conclude that the court of appeals would reach a different

---

[2] Maxon has also provided a notice of supplemental authority, Dkt. 128, which attaches an administrative decision of the Wisconsin Office of the Commissioner of Insurance, which endorses *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456 (S.D.N.Y. 2014), a district court decision contrary to *Norem*. But the decision of the Office of the Commissioner of Insurance was later vacated and it is not binding here.

conclusion if it were interpreting Maxon's policy. *Norem*'s conclusion is plainly stated and this court must follow it: "absent a promise to use a specific formula when calculating a [cost of insurance] rate, an insurer is not bound to consider only those factors listed in a [cost of insurance] provision. *Id*. at 1155.

For count II, Maxon contends that Sentry breached the policy by including in the cost of insurance some of its administrative expenses, which should have been limited to the five-dollar administrative fee expressly stated in the policy. But this claim, too, is foreclosed by *Norem*. The policy in *Norem* included a separate "administrative expense charge," and the plaintiff argued that the insurer was "double-dipping" by incorporating administrative costs into the cost of insurance rate. *Norem*, 737 F.3d at 1153. The court rejected this argument because the policy did not define what expenses the administrative fee was intended to cover, and the insurer was therefore free to include administrative expenses as part of its other monthly charges. The same is true here: although the policy states that Maxon will be charged an "administrative fee" each month, the policy does not define administrative costs or explain what the administrative fee is meant to cover.

For count III, Maxon contends that Sentry failed to lower its rates to account for improved mortality expectations. But here again, Maxon fails to differentiate this case from *Norem*. *See id.* at 1150 ("It is undisputed that Dr. Norem's COI rates have remained unchanged"). The *Norem* court noted that perhaps the plaintiff would have a claim if the insurer charged rates that were "wholly divorced" from mortality. *Id.* at 1153 (quoting *In Re Conseco Life Ins. Co.*, 920 F. Supp. 2d 1050, 1062 (N.D. Cal. 2013)). But unless the rates were "utterly unrelated" to mortality or the enumerated factors, the insurer's failure to closely track fluctuating mortality expectations did not constitute a breach of contract. Furthermore, like

7

Sentry, the insurer in *Norem* never assessed charges that exceeded its guaranteed rates. And because the guaranteed rates were drawn from CSO mortality tables, which in turn were approved by regulators for use in actuarial reserving, it was "difficult to characterize [the rate] . . . as an inflated figure over and above what he identifies as 'mortality experience.'" *Id.* at 1150.

B. **Non-contract claims**

Maxon contends that even if the court grants judgment on her contract claims, it should not grant judgment on count IV (conversion) and count V (declaratory and injunctive relief).

Maxon is correct that her conversion claim has different elements than her breach of contract claims.[3] But to prove a conversion claim Maxon would have to show that Sentry took money that belonged to Maxon without her consent. The only money that Sentry is alleged to have wrongly taken is the premiums for the insurance component. So to prove conversion, Maxon would have to show that she did not consent to Sentry taking these premiums, which is just another way of saying that Sentry breached the terms of the policy. Maxon cannot prevail on her conversion claim unless she can show a breach of the policy, and that showing is foreclosed by *Norem*.

Maxon's request for declaratory and injunctive relief, is not a separate substantive claim, but rather a request for a certain type for relief. Maxon says that even if she does not have a

---

[3] *See H.A. Friend & Co. v. Prof'l Stationery, Inc.*, 2006 WI App 141, ¶ 11, 294 Wis. 2d 754, 720 N.W.2d 96 ("The elements of conversion are: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property."); *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007) ("Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time.")

8

claim for damages, she may still seek certification of an injunctive class under Rule 23(b)(2). But she does not explain why she would be entitled to declaratory or injunctive relief if she doesn't state a claim under substantive law. The court sees no basis for granting injunctive relief, so it will dismiss count V as well.

## C. Leave to amend

Maxon contends that even if the court adopts Sentry's interpretation of the policy, she could still prove a breach of the policy. Maxon's theory is that even if Sentry can consider non-enumerated factors in setting the premium, the listed mortality factors must play a "significant, foundational role in determining the rate." Dkt. 96, at 16 (quoting *Thao*, 549 F. App'x at 537). Maxon says that discovery has revealed that the listed factors did not play a significant role in calculating the mortality rate because, in order to meet its profit objectives, Sentry set the rate much higher than it would have if it had considered the listed factors alone. So Maxon asks the court give her an opportunity to show that Sentry breached the policy by using non-enumerated factors as the primary component of its calculation of the premiums for the insurance component. Maxon's request is essentially a request for leave to amend her complaint. Under Rule 15, leave to amend should be freely given when justice requires, but a district court has broad discretion to deny leave when amendment would be futile. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

The proposed new allegations would not change the court's decision. The "foundational role" discussed in *Thao* was merely the use of the enumerated factors to "differentiate one insured from another and insure that similarly situated insureds will be treated alike in the amounts they are charged for the cost of insurance." *Thao*, 549 F. App'x at 537. In other words, the enumerated factors were used to assign a particular rate to a particular policyholder, but

9

the insurer was still free to set those rates according to the "goals of [the insurer's] business as a for-profit life insurance company." *Id.* And so long as those rates remain below the guaranteed rates based on the CSO Mortality Table, the rates remain tethered to the insurer's expectations as to future mortality expectations. *Norem*, 737 F.3d at 1150. Thus, even if Maxon amended her complaint to allege that Sentry relied primarily on non-enumerated factors to set its rates, Sentry still would not have violated the terms of its policy because it relied on the enumerated factors to determine which rate applied to each individual policyholder.

Because amendment would be futile, the court will not grant Maxon leave to amend her complaint.

CONCLUSION

This case falls squarely within the Seventh Circuit's holdings in *Norem* and *Thao*. Because *Norem* forecloses Maxon's essential theory of liability, the court will grant judgment for Sentry.

ORDER

IT IS ORDERED that:

1. Defendant Sentry Life Insurance Company's motion for judgment on the pleadings, Dkt. 92, is GRANTED.

2. Plaintiff Prudence Maxon's motion for leave to file a sur-reply in opposition to Sentry's motion for judgment on the pleadings, Dkt. 115, is GRANTED.

3. Maxon's motion for class certification, Dkt. 73, is DENIED as moot.

4. Sentry's motion for leave to file a sur-reply in opposition to Maxon's motion for class certification, Dkt. 124, is DENIED as moot.

5. Maxon's motion for oral argument, Dkt. 126, is DENIED.

6. The clerk of court is directed to enter judgment for defendant and close the case.

Entered September 19, 2019.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge